STATE OF RHODE ISLAND
PROVIDENCE, SC.

SUPERIOR COURT

WILLIAM J. ANDREONI, MD, AND
OPHTHALMIC SURGEONS, LTD

VS.

CA NO. PC-07-5789

PAYCHEX, INC. AND
CHASE BANK, USA, NA f/k/a BANK ONE

**COMPLAINT**

Now comes your Plaintiffs, individually and collectively, and for this their cause of action states as follows:

(1) Plaintiff, William J. Andreoni, MD is and was, at all times material to this Complaint, a resident of the City of Providence, County of Providence, State of Rhode Island;

(2) Plaintiff, Ophthalmic Surgeons, LTD is and was, at all times material to this Complaint, a Rhode Island corporation authorized to do business in the State of Rhode Island and is in good standing with the Secretary of State;

(3) Upon information and belief, Defendant Paychex, Inc. is a Delaware corporation, is authorized to do business in the State of Rhode Island, is currently in good standing with the Secretary of the State of Rhode Island, and its principal address in the State of Rhode Island is 501 Wampanoag Trail, City of East Providence, County of Providence, State of Rhode Island;

(4) Upon information and belief, Defendant Chase Bank, USA, NA, f/k/a Bank One is a Delaware corporation and is presently in good standing with the Secretary of State for the State of Delaware;

**COUNT I - PAYCHEX, INC.**

(5) On or about December 15, 1994, your Plaintiffs and Defendant did enter into an agreement which otherwise may be properly classified as a "contract for services" [please see Exhibit A which is attached hereto and made a part hereof];

(6) Defendant, at all times material hereto, held itself out as an expert in the providing of those payroll services otherwise set forth in Exhibit A;

(7) Plaintiffs did pay to your Defendant valuable consideration to procure the services of the Defendant;

True Copy Attest:

Office of Clerk of Superior Court
Counties of Providence & Bristol
Providence, Rhode Island

(8) In exchange for said consideration above-recited, your Defendant did promise and contract to perform certain services for and on behalf of your Plaintiffs;

(9) Said services to be performed by the Defendant included, but is not limited to:

(a) To perform services for Plaintiffs in Plaintiffs' capacity as a "payroll client";

(b) To process direct deposit payroll in compliance with automated clearinghouse regulations;

(c) To make sure payments commonly known as "weekly payroll payments" to Plaintiffs' employees in an authorized amount not to exceed fifty-two (52) weekly paychecks;

(10) In the discharging of its responsibilities to Plaintiffs, Defendant did owe to Plaintiffs a fiduciary duty, as well as a duty to utilize its expertise in such a fashion as to benefit the Plaintiffs and to protect the Plaintiffs;

(11) Plaintiffs, on their part, did perform all obligations on their part required to be performed;

(12) Defendant did fail to perform on its part those obligations it was otherwise obligated to perform, said failure includes, but is not limited to:

(a) Did not maintain its fiduciary duty to the Plaintiffs;

(b) Did not use its expertise in the discharge of its responsibilities;

(c) Was negligent in the discharge of its duties to the Plaintiffs;

(13) Plaintiffs further aver that Defendant failed to perform those acts required on its part to be performed. Said failure includes, but is not limited to the providing to Carleen Conner (who at all times material to this Complaint was an employee of Plaintiffs) the following:

(a) Eighty-three (83) weekly paychecks in calendar year 2000, said year only being composed of fifty-two (52) weeks;

(b) Eight-one (81) weekly paychecks in calendar year 2001, said year only being composed of fifty-two (52) weeks;

(c) Ninety-one (91) weekly paychecks in calendar year 2002, said year only being composed of fifty-two (52) weeks;

(d) Ninety-nine (99) weekly paychecks in calendar year 2003, said year only being composed of fifty-two (52) weeks;

(e) One hundred and nine (109) weekly paychecks in calendar year 2004, said year only being composed of fifty-two (52) weeks;

(f) One hundred and twelve (112) weekly paychecks in calendar year 2005, said year only being composed of fifty-two (52) weeks;

(g) One hundred and nineteen (119) weekly paychecks in calendar year 2006, said year only being composed of fifty-two (52) weeks;

(14) Plaintiffs further aver that Defendant knew or should have known that such payments to Carleen Conner were "outside of the ordinary" and therefore, based on its professed expertise and in the discharge of its contractual responsibilities and fiduciary duty to Plaintiffs, should have contacted Plaintiffs and inquired as to the correctness of said payroll payments;

(15) Plaintiffs further aver that they reasonably relied upon the fact that Defendant would have notified them of such irregularities above-referenced because:

(a) Defendant held itself out as an expert in the management of payroll obligations;

(b) Said agreement specifically sets forth in paragraph 3 of Exhibit A all of Plaintiffs' continuing obligations under said agreement and Plaintiffs did perform those tasks;

(c) Plaintiffs reasonably relied on those representations of Defendant, both expressed and implied;

(d) Defendant breached the contract in that it failed to perform as required;

(16) As a direct and proximate result of Defendant's breach of the contract, its negligence and its recklessness, your Plaintiffs have suffered damages in the amount of $233,159.00.

WHEREFORE, your Plaintiffs pray for judgment in an amount provable at trial and sufficient to grant this court jurisdiction, plus interest, costs and reasonable attorney's fees.

**COUNT II - PAYCHEX, INC.**

(17) Plaintiffs hereby incorporate paragraphs (1) through (15) of Plaintiffs' Complaint into this Count as if recited at length;

(18) Plaintiffs further aver that the Defendant failed to discharge its duties and did so not only because it was negligent and otherwise breached the contract, but because the error in said payroll payment worked as a direct economic benefit to the Defendant;

(19) In support of the allegations set forth in paragraph (17) above, Plaintiffs reference this Court to paragraph 6 of Exhibit A which reads in pertinent part:

> "Paychex fee for performing this service is in addition to **the value of the use of the funds held in Paychex account pending payment to the appropriate employees..."** [Emphasis added.]

(20) Plaintiffs further aver that this direct economic benefit to the Defendant constitutes cause why the Defendant did not notify Plaintiffs of the "out of the ordinary" conduct of Carleen Conner as it relates to Paychex issuing extraordinary payroll checks to her in calendar years 2000 through and including 2006;

(21) Plaintiffs further aver that such conduct on the part of the Defendant was willful, reckless, wanton and demonstrated a disregard for Plaintiffs' rights.

WHEREFORE, Plaintiffs pray that this Court award it punitive damages in an amount to be determined by the jury and that Plaintiffs be awarded attorney fees, interest and costs.

**COUNT III - CHASE BANK USA, NA**

Now comes your Plaintiffs, Ophthalmic Surgeons, Ltd. and William Andreoni, MD, and for this cause of action against Chase Bank USA, NA f/k/a Bank One state as follows:

(22) On a date certain, the exact date unknown, Plaintiffs, Ophthalmic Surgeons, Ltd. and William Andreoni, MD, were solicited here in the State of Rhode Island by Chase Bank USA, NA f/k/a Bank One to accept and use a Bank One Visa Credit Card;

(23) Plaintiffs did accept said invitation and did secure a Bank One Visa credit card, later changed to Chase credit card. Said credit card was issued in the business name of Ophthalmic Surgeons, Ltd. with the authorized user's name, specifically William Andreoni, MD, imprinted on said card;

(24) Plaintiff, William Andreoni, MD did begin to use said credit card and did make all appropriate payments to your Defendant as otherwise required by contract;

(25) On a date certain, the exact date unknown, your Plaintiffs were notified by Bank One that Bank One was changing it's name to Chase and issued to your Plaintiffs a credit card with the new name of Chase appearing on the same;

(26) On a date certain, the exact date unknown, your Defendant, Chase Bank USA, NA f/k/a Bank One did issue a second Visa credit card in the name of Plaintiff Ophthalmic Surgeons, Ltd. with an alleged authorized user's name imprinted on the same, specifically Carleen Conner;

(27) In fact, that credit card above-referenced issued in the user's name Carleen Conner was not authorized by Plaintiff Ophthalmic Surgeons, Ltd. or it's authorized officer, William Andreoni, MD;

(28) In fact, said card above-referenced was fraudulently secured by the user Carleen Conner;

(29) Plaintiffs further aver that Defendant failed to follow its own procedure to secure in writing authorization from Plaintiffs to issue said card to user Carleen Conner and said conduct on Defendant's part was negligent;

(30) Plaintiffs further aver that said fraudulently issued credit card above-referenced was used by Carleen Conner for purposes completely inconsistent with Plaintiff Ophthalmic Surgeons, Ltd.'s business;

(31) Plaintiffs further allege that Defendant knew or should have known of those facts set forth in paragraph (30) above and that their failure to recognize the same and to notify Plaintiff and it's authorized officer William Andreoni, MD was negligent;

(32) Plaintiffs further aver that to the best of their knowledge Carleen Conner, the unauthorized user of said card above-referenced, did charge to Plaintiff Ophthalmic Surgeon, Ltd.'s account a sum of money in excess of $37,680.00, all of said purchases being unauthorized;

(33) Plaintiffs further aver that, upon discovery of the fraudulent issued credit card and the fraudulent charges made, they did request from Defendant a credit to be applied to their account in the amount of $37,680.00 and that Defendants have refused to do so;

(34) Plaintiffs further aver that the conduct on the part of the Defendant was negligent; was a breach of its fiduciary duty to Plaintiffs; and was otherwise a breach of its contractual obligations to Plaintiffs;

(35) Plaintiffs further aver that at all times material to this Complaint they performed all things on their part reasonably expected to be performed;

(36) Plaintiffs aver that as a direct and proximate result of Defendant's conduct they have been damaged.

WHEREFORE, Plaintiffs pray that this honorable court enter judgment on behalf of the Plaintiffs in an amount provable at trial and sufficient to grant this court jurisdiction, plus interest, reasonable attorney fees and costs.

Plaintiffs,
By and through their attorney,

Daniel V. McKinnon (#0669)
McKinnon & Harwood
1168 Newport Avenue
Pawtucket, RI 02861
(401) 723-9655

Dated: 10/30/07

**PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL COUNTS**

# EXHIBIT A

| | |
|---|---|
| Branch # | 12 |
| Client # | 0012-7109 |

## DIRECT DEPOSIT TERMS AND CONDITIONS

1. TERMS OF AGREEMENT. Initiation of Direct Deposit Service is subject to approval of client's credit. If approved, Paychex's performance of its service under this Agreement shall begin upon implementation date and shall continue until terminated upon 10 days written notice by either party or until terminated as otherwise provided for by this Agreement.

2. SERVICES TO BE PERFORMED. In addition to the services Paychex performs for the Client as a payroll client, client hereby employs Paychex to process direct deposit payroll in compliance with Automated Clearing House regulations. One business day prior to the client's payroll check date, Paychex is authorized to draw from Client's bank account as specified by Client, such amounts as are necessary to pay its employees. Such amounts are to be held in an account established by Paychex until check date when funds availability are due to the employee(s).

3. CLIENT'S RESPONSIBILITY. The Client agrees to accept the following obligations and responsibilities:
   A. To execute all necessary documentation so that Paychex may withdraw funds from the Client's bank account to process direct deposit payroll.
   B. To execute any other documents which may be required for Paychex to perform its responsibilities under this Agreement.
   C. To have available in Client's bank account sufficient funds for Paychex to make the withdrawals provided for by this Agreement.

4. CLIENT'S DEFAULT. If the Client:
   A. Fails to pay Paychex any fee due under this Agreement or any other agreement.
   B. Fails to perform any obligations under this Agreement or any other agreement with Paychex. In addition, the client acknowledges that the Direct Deposit service will be terminated upon this occurence.
   C. Files or has filed against it a petition for bankruptcy or becomes insolvent or has a substantial portion of its property become subject to levy, execution or assignment, then Paychex at its option may terminate this Agreement and declare all amounts due and to become due, immediately due and payable. Such remedies are cumulative and in addition to all other remedies afforded by this Agreement or by law.

   In the event Paychex's authorized withdrawal from Client's account is returned due to insufficient funds or any other reason, Client agrees to reimburse Paychex for all charges, losses or expenses, incurred by Paychex. In addition, the client acknowledges that the Direct Deposit service will be terminated upon this occurence.

   If Paychex or client terminates this Agreement, Paychex's obligations under this Agreement shall cease. Paychex's sole responsibility to the Client shall be to return to the Client any payroll then held by Paychex after the deduction of all fees and expenses due Paychex. The Client hereby agrees to hold harmless and indemnify Paychex for any damages, including attorneys' fees, which Paychex incurs as a result of the Client's default under this agreement.

5. LIMITATION OF LIABILITY. Paychex shall only be liable for its own negligence and not the negligence of any other person or entity which provides services as a result of Paychex' performance of its obligations under this Agreement.

   PAYCHEX SHALL UNDER NO CIRCUMSTANCES BE RESPONSIBLE OR LIABLE FOR ANY SPECIAL, INDIRECT, INCIDENTAL OR CONSEQUENTIAL DAMAGES WHICH THE CLIENT MAY INCUR AS A RESULT OF PAYCHEX'S FAILURE TO PERFORM ANY TERM OR CONDITION OF THIS AGREEMENT, EVEN IF PAYCHEX HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

6. PAYMENT. Paychex's fee for performing this service is in addition to the value of the use of the funds held in Paychex's account pending payment to the appropriate employee(s). Paychex may change the amount charged for this service upon thirty (30) days written notice to the Client. The Client shall pay all invoices within ten (10) days of receipt thereof. The Client agrees to pay Paychex for all collection costs, including reasonable attorneys' fees, which Paychex incurs as a result of the Client's default.

7. MISCELLANEOUS PROVISIONS. This Agreement shall be governed by the laws of the State of New York. The County of Monroe in the State of New York is hereby designated as the place of trial of any action or proceeding initiated by Paychex arising out of or in connection with this Agreement.

   This Agreement contains the entire understanding of the parties and may be modified only by a subsequent writing signed by both parties. The Client acknowledges that there have been no other representations or warranties made by Paychex to the Client which are not set forth in this Agreement.

   If any provision of this Agreement or any portion thereof shall be held to be invalid, illegal or unenforceable, the validity, legality or enforceability of the remainder of this Agreement shall not in any way be affected or impaired.

8. ASSIGNABILITY. This Agreement may not be assigned by the Client without the prior written consent of Paychex. Any assignment made without such consent shall be null and void.

9. REFUND/ADJUSTMENTS. Any refunds/adjustments will not be processed until verification is available that "good" funds are in the client's account.

| Company Name: Ophthalmic Surgeons, Ltd. | | |
|---|---|---|
| SIGNATURE OF DIRECT DEPOSIT AUTHORIZATION OFFICER | | |
| Authorized Signature: Delores A Leffert | Title: Asst. Office Manager | Date: 12/15/94 |

CORPORATE DIRECT DEPOSIT COPY—ORIGINAL

Rhode Island Justice System

Receipt Number: SCP259450
Date: 31-OCT-2007
MRA

MR MCKINN[illegible]

Amount

[illegible]2007-[illegible]
[illegible]IAM [illegible] V PAYCHEX IN
[illegible]LING FEE 150.00
[illegible] SERVICES 10.00

[illegible]ent Balance 160.00
Amount Paid 160.00
Balance Due 0.00

[illegible] 160.00
0.00
Amount Tendered: 160.00
Amount Paid: 160.00
Change: 0.00

True Copy Attest

[signature]

Office of Clerk of Superior Court
Counties of Providence & Bristol
Providence, Rhode Island

MISC/FISCAL OFFICE