# EXHIBIT A

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND**

WILLIAM J. ANDREONI, M.D. and
OPHTHALMIC SURGEONS, LTD.,

Plaintiff,

v. C.A. No. 07-413-ML

PAYCHEX, INC. and CHASE BANK,
USA, NA f/k/a BANK ONE,

Defendants.

**DECLARATION OF AMY L. FICI**

1. I am an attorney in the office of the General Counsel of defendant Paychex, Inc. ("Paychex"). In that capacity, I have knowledge of Paychex's business operations as well as its records, and specifically Paychex's contractual agreements with clients and customers. I have personal knowledge of the matters stated herein and if called, I could and would testify competently thereto.

2. Paychex is a Delaware corporation with its principal place of business in Rochester, New York. Paychex has branch offices in several states, including Rhode Island.

3. Paychex offers various payroll services to employers, including, among other things, the preparation and payment (with funds provided by employers) of federal and state taxes and the preparation of employee paychecks.

4. On or about December 15 1994, Ophthalmic Surgeons and Paychex entered into an agreement for direct deposit payroll services (the "1994 Contract"). Attached hereto as Exhibit 1 is a true and correct copy of the 1994 Contract.

5. On or about July 24, 1996, Paychex and Ophthalmic Surgeons entered into an agreement adding "Taxpay Services" (the "1996 Contract"). Attached hereto as Exhibit 2 is a true and correct copy of the 1996 Contract.

6. Pursuant to these contracts, Ophthalmic Surgeons designated a contact responsible for specifying to Paychex the amount to be withdrawn from Ophthalmic Surgeons' bank account for payroll. From 2000 to 2006, the designated contact was Ophthalmic Surgeons' employee, Carleen Connor.

7. Pursuant to the contracts, and based upon the instructions provided by the client's designated contact, Paychex withdrew the specified amount from the Ophthalmic Surgeons' bank account one day before the desired payroll date, and Paychex personnel in Rochester, New York processed electronic funds transactions in such amounts as were necessary to pay Ophthalmic Surgeons' payroll. Paychex personnel in Rochester also processed electronic funds transactions withdrawing from Ophthalmic Surgeons' bank account such amounts as were necessary to pay payroll taxes, and prepared and filed returns for such taxes.

8. Pursuant to the 1996 Contract, Paychex withdrew monies from Ophthalmic Surgeons' bank account for payment of the required payroll taxes on the amounts paid to Carleen Connor between 2000 and 2006. The money for the payment of the payroll taxes was withdrawn from Ophthalmic Surgeons' bank account on the date the payroll was paid, and was held in a separate account until such time as the payroll taxes were due.

I declare under penalty of perjury that the foregoing is true and correct.

DATED: December 4, 2007

Amy L. Fici

# EXHIBIT 1
# to Declaration of Amy L. Fici

| | |
|---|---|
| Branch # | 12 |
| Client # | 0012-7109 |

## DIRECT DEPOSIT TERMS AND CONDITIONS

1. TERMS OF AGREEMENT. Initiation of Direct Deposit Service is subject to approval of client's credit. If approved, Paychex's performance of its service under this Agreement shall begin upon implementation date and shall continue until terminated upon 10 days written notice by either party or until terminated as otherwise provided for by this Agreement.

2. SERVICES TO BE PERFORMED. In addition to the services Paychex performs for the Client as a payroll client, client hereby employs Paychex to process direct deposit payroll in compliance with Automated Clearing House regulations. One business day prior to the client's payroll check date, Paychex is authorized to draw from Client's bank account as specified by Client, such amounts as are necessary to pay its employees. Such amounts are to be held in an account established by Paychex until check date when funds availability are due to the employee(s).

3. CLIENT'S RESPONSIBILITY. The Client agrees to accept the following obligations and responsibilities:
   A. To execute all necessary documentation so that Paychex may withdraw funds from the Client's bank account to process direct deposit payroll.
   B. To execute any other documents which may be required for Paychex to perform its responsibilities under this Agreement.
   C. To have available in Client's bank account sufficient funds for Paychex to make the withdrawals provided for by this Agreement.

4. CLIENT'S DEFAULT. If the Client:
   A. Fails to pay Paychex any fee due under this Agreement or any other agreement.
   B. Fails to perform any obligations under this Agreement or any other agreement with Paychex. In addition, the client acknowledges that the Direct Deposit service will be terminated upon this occurence.
   C. Files or has filed against it a petition for bankruptcy or becomes insolvent or has a substantial portion of its property become subject to levy, execution or assignment, then Paychex at its option may terminate this Agreement and declare all amounts due and to become due, immediately due and payable. Such remedies are cumulative and in addition to all other remedies afforded by this Agreement or by law.

   In the event Paychex's authorized withdrawal from Client's account is returned due to insufficient funds or any other reason, Client agrees to reimburse Paychex for all charges, losses or expenses, incurred by Paychex. In addition, the client acknowledges that the Direct Deposit service will be terminated upon this occurence.

   If Paychex or client terminates this Agreement, Paychex's obligations under this Agreement shall cease. Paychex's sole responsibility to the Client shall be to return to the Client any payroll then held by Paychex after the deduction of all fees and expenses due Paychex. The Client hereby agrees to hold harmless and indemnify Paychex for any damages, including attorneys' fees, which Paychex incurs as a result of the Client's default under this agreement.

5. LIMITATION OF LIABILITY. Paychex shall only be liable for its own negligence and not the negligence of any other person or entity which provides services as a result of Paychex' performance of its obligations under this Agreement.

   PAYCHEX SHALL UNDER NO CIRCUMSTANCES BE RESPONSIBLE OR LIABLE FOR ANY SPECIAL, INDIRECT, INCIDENTAL OR CONSEQUENTIAL DAMAGES WHICH THE CLIENT MAY INCUR AS A RESULT OF PAYCHEX'S FAILURE TO PERFORM ANY TERM OR CONDITION OF THIS AGREEMENT, EVEN IF PAYCHEX HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

6. PAYMENT. Paychex's fee for performing this service is in addition to the value of the use of the funds held in Paychex's account pending payment to the appropriate employee(s). Paychex may change the amount charged for this service upon thirty (30) days written notice to the Client. The Client shall pay all invoices within ten (10) days of receipt thereof. The Client agrees to pay Paychex for all collection costs, including reasonable attorneys' fees, which Paychex incurs as a result of the Client's default.

7. MISCELLANEOUS PROVISIONS. This Agreement shall be governed by the laws of the State of New York. The County of Monroe in the State of New York is hereby designated as the place of trial of any action or proceeding initiated by Paychex arising out of or in connection with this Agreement.

   This Agreement contains the entire understanding of the parties and may be modified only by a subsequent writing signed by both parties. The Client acknowledges that there have been no other representations or warranties made by Paychex to the Client which are not set forth in this Agreement.

   If any provision of this Agreement or any portion thereof shall be held to be invalid, illegal or unenforceable, the validity, legality or enforceability of the remainder of this Agreement shall not in any way be affected or impaired.

8. ASSIGNABILITY. This Agreement may not be assigned by the Client without the prior written consent of Paychex. Any assignment made without such consent shall be null and void.

9. REFUND/ADJUSTMENTS. Any refunds/adjustments will not be processed until verification is available that "good" funds are in the client's account.

Company Name Ophthalmic Surgeons, Ltd.

SIGNATURE OF DIRECT DEPOSIT AUTHORIZATION OFFICER

| Authorized Signature | Title | Date |
|---|---|---|
| Delores A Leffert | Asst. Office Manager | 12/15/94 |

CORPORATE DIRECT DEPOSIT COPY—ORIGINAL

# EXHIBIT 2
# to Declaration of Amy L. Fici

CORPORATE COPY

[redacted] Client Name OPHTHALMIC SURGEONS, LTD

12-17169

1. *Terms of Agreement.* Initiation of the following Electronic Network Service(s) is subject to approval of Client's credit. If approved, Paychex' performance of its service(s) under this Agreement shall begin upon the effective date specified by Paychex (the "Implementation Date") and shall continue until revoked by Client in writing received by Paychex or until terminated as otherwise provided in this Agreement. Until the Implementation Date, Client shall continue to provide for itself the service(s) requested of Paychex hereunder.

In addition to the payroll service(s) which the Client receives from Paychex, Client hereby employs Paychex to provide those services selected hereunder. The services are effected through electronic funds transfers (EFTs) in compliance with Automated Clearing House regulations.

2. *Client's Responsibility.* The Client agrees to accept the following obligations and responsibilities with respect to each service selected:
A. to execute all documentation needed by Paychex to originate EFT transactions on the Client's designated bank account;

B. to execute any other documents which may be required by Paychex to perform its responsibilities under this Agreement; and

C. to have available in Client's bank account sufficient funds to cover EFT transactions provided for in this Agreement.

3. *Client's Default.* If the Client:
A. fails to perform any obligations under this Agreement or any other agreement with Paychex; or

B. fails to pay Paychex any fee due under this Agreement or any other agreement with Paychex; or

C. files or has filed against it, a petition for bankruptcy or becomes insolvent or has a substantial portion of its property become subject to levy, execution or assignment;

then Paychex at its option may terminate this Agreement and declare all amounts due and to become due, immediately due and payable. Such remedies are cumulative and in addition to all other remedies afforded by this Agreement or by law.

In the event that Paychex' EFT transactions on Client's account are returned due to insufficient funds or for any other reason, Client agrees to promptly reimburse Paychex for all advances made by Paychex and to pay interest on the unpaid amount at the rate of one and one-half (1 1/2) percent per month until paid. Client agrees to pay Paychex for all collection costs, including reasonable attorney's fees, which Paychex may incur as a result of Client's default. Client further agrees that Paychex may charge back any amount which Paychex advanced to Client's employees' accounts and which Client failed to have available for Paychex. The Client agrees to defend and indemnify Paychex, and hold it harmless from any claim, liability, damage or expense, including reasonable attorney's fees, which Paychex incurs as a result of Client's default under this Agreement and/or Paychex' exercise of its rights under this Agreement.

Client acknowledges that, upon termination of this Agreement, the electronic services provided by Paychex will be terminated and Client shall be responsible thereafter for providing to its employees or to the proper taxing authorities the services which had been provided by Paychex.

If Paychex or Client terminates this Agreement, Paychex' obligations under this Agreement shall cease. Paychex' sole responsibility to Client shall be to return to Client any funds then held by Paychex, after the deduction of all fees and expenses due Paychex.

4. *Service to be Performed.* Client hereby employs Paychex to provide one or more of the following services as indicated by Client's initials in the appropriate box at the bottom of this page.

Taxpay® Client hereby employs and authorizes Paychex:
A. on Client's payday, to process EFT transactions for such amounts as are necessary to pay to proper taxing authorities, payroll taxes which are specifically identified on the Reporting Agent Authorization signed by Client, which amounts are to be held in separate accounts established by Paychex until such time as these amounts are due to the appropriate taxing authorities; and

B. to prepare, sign and file with proper taxing authorities all returns for such taxes.

This service does not include the depositing or filing of excise, sales and use, or corporate taxes.

Direct Deposit. Client hereby employs and authorizes Paychex, one day prior to the Client's payday, to process EFT transactions for such amounts as are necessary to pay Client's employees. Such amounts are to be held in an account established by Paychex until Client's payday when funds shall be deposited to employee accounts as specified.

Electronic Invoice Payment. Client hereby agrees to pay its monthly fees for all Paychex services through an EFT transaction. Thus, Paychex is authorized to collect its fees from Client's bank account on the tenth day (or the next banking day if the tenth is a *non-banking* day) of the month following that month in which Paychex service(s) are rendered.

With regard to charges for Paychex services, Client agrees that the funds representing the total amount due for all applicable Paychex billings must be on deposit in Client's designated bank account in collectible form and in sufficient amount on the day the Paychex EFT charge is initiated. If sufficient funds are not available upon presentation of Paychex' EFT charge to Client's bank account, Paychex may take such action as it deems appropriate and consistent with this or any other agreement with Client.

5. *Refunds/Adjustments.* Any Client requests for refunds or adjustments will not be processed until verification is available that sufficient funds were received by Paychex from Client's bank account to cover all Payments made by, or fees due to, Paychex.

6. *Limit of Liability.* Paychex shall only be liable for its own negligence and not the negligence of any other person or entity which provides services in connection with or as a result of Paychex' performance of its obligations under this Agreement.

Paychex' sole liability and the Client's sole remedy for Paychex' failure to perform the services required of it by this Agreement, shall be for Paychex to remit to the appropriate taxing authority the payroll taxes received from the Client and to reimburse the Client for any interest or penalties relating to such error or omission by Paychex.

*Paychex shall, under no circumstances, be responsible or liable for any special, indirect, incidental or consequential damages which the client may incur as a result of Paychex' failure to perform any term or condition of this Agreement, or as a result of Paychex' exercise of its rights under this agreement, even if Paychex has been advised of the possibility of such damages.*

7. *Payment.* Paychex' fee for performing any of the services requested by the Client under this Agreement are in addition to the value of the use of the funds held in a separate account pending payment to the appropriate entities. If the Client has not selected Electronic Invoice Payment service, the Client shall pay all invoices within ten (10) days of receipt thereof. The Client agrees to pay Paychex for all collection costs, including reasonable attorney's fees, which Paychex may incur as a result of the Client's default.

8. *Miscellaneous.* This Agreement shall be governed by the laws of the State of New York. Any dispute arising out of or in connection with this Agreement, if not otherwise resolved, shall be determined by arbitration in Rochester, New York, in accordance with the Rules of the American Arbitration Association and it is the express desire of the parties that the prevailing party be awarded costs and attorneys fees and that the award be entered as a judgement in any jurisdiction in which the non-prevailing party does business.

This Agreement contains the entire understanding of the parties and may be modified only by a subsequent writing signed by both parties. The Client acknowledges that there have been no other representations or warranties made by Paychex or the Client which are not set forth in this Agreement.

If any provision of this Agreement or any portion thereof shall be held to be invalid, illegal or unenforceable, the validity, legality or enforceability of the remainder of this Agreement shall not in any way be affected or impaired.

9. *Assignability.* This Agreement may not be assigned by the Client without the prior written consent of Paychex. Any assignment made without such consent shall be null and void.

*(Please initial service to be performed.)* Taxpay X cusA Direct Deposit ________ Electronic Invoice Payment ________

Authorized Officer's Signature: [signature] Title: ________ Date: ________

#150610 (Rev. 1/96)